**STATE, ex rel. H. K. PORTER COMPANY, Relator, v. KLAPP et, Respondents.**

Ohio Appeals, Tenth District, Franklin County.

No. 5926. Decided October 28, 1958.

Vorys, Sater, Seymour & Pease, James E. Seymour, of Counsel, for relator.

William Saxbe, Atty. Genl., John R. Barrett, Brown W. Pettit, Asst. Attys. Genl., Columbus, for respondents.

## OPINION

By BRYANT, J.

This is an action in mandamus brought originally in this court. Relator is the H. K. Porter Company, a corporation organized under the laws of the State of Delaware, and authorized to do business in Ohio. Three of the respondents, Ralph Klapp, Maynard Dickerson and Michael Pavick, are members of the Industrial Commission of Ohio, and the fourth is James L. Young, Administrator of the Bureau of Workmen's Compensation.

The questions now before the court arise under a general and special demurrer to the petition.

The petition alleges the corporate capacity of relator herein called "Porter," the official capacity of the three members of the Industrial Commission, herein called "Commission," and the official status of James L. Young, herein called "Administrator."

The petition alleges that said Commission pursuant to §4121.131 R. C., is required to fix the rates of premiums paid by employers, determine their contributions, adopt rules, regulations and systems of rating, rate revision and merit rating of employers amenable to **Chapter 4123 R. C.,** dealing with workmen's compensation.

Porter says that prior to July 31, 1957 it was engaged in the wholesale distribution and warehousing of rubber products in Cincinnati, herein called "Cincinnati Operation," with an annual payroll of $50,000. Porter further says that prior to said date, the Cleveland Hardware and Forging Company, an Ohio corporation, herein called "Cleveland Company," operated a factory for the manufacture of hardware goods in Cleveland, herein called "Cleveland Operation," with an annual payroll of $2,000,000.

On the said date it is alleged that the Cleveland Company sold and transferred to Porter the entire manufacturing business constituting the Cleveland operation and that since that time Porter has continued the operation thereof without change in personnel, facilities or location.

The petition makes reference to the provisions of §§4123.34 (C) and 4123.31 R. C., which have to do with rating systems for merit or individual rating. It is the claim of Porter that under said sections said commission is required to adopt a system for merit rating or individual rating of employers amenable under the act which will equitably rate the several risks, based in part upon individual accident experience, will encourage and stimulate accident prevention and will conserve the basic principles of workmen's compensation insurance.

Porter alleges that prior to July 31, 1957 the Cleveland operation was carried on the records of the said commission as risk No. 1305 and that

prior to said date the Cincinnati operation was carried on the records of the said commission as risk No. 161,569.

Porter alleges that the commission has adopted rules and regulations by which the several classes and types of employers and occupations are classified into groups and upon the basis of accident losses resulting from claims sustained by all members of a particular group average or basic rates are established and promulgated. Porter further alleges that under the rules and regulations of said commission employers with five years experience may obtain a reduction in the rate of premium paid in the future, if during the five year period, the total of their losses is below the average or expected losses for employers in the same classification. The petition states further in some detail the steps by which employers entitled thereto obtain the so-called merit ratings.

Porter alleges that during the five years prior to July 1, 1957 as a result of its Cincinnati operation, accident and occupational disease losses for said five years totalled $85 while expected or average losses of like employers for said five years for pay rolls of like size as that of Porter was $1,294. Porter alleges this established a ratio of 6.8% between the actual and expected losses of the Cincinnati operation and that the small amount of accident and occupational disease claims except for the small size of the Cincinnati operation, would have entitled it to a merit credit of 93%, but due solely to the small size of the Cincinnati operation this credit was reduced to 3%.

Porter alleges that the Cleveland Company during the five year period prior to July 31, 1957 in connection with the Cleveland operation sustained losses due to accident and occupational disease totalling $42,387 and that for said period the expected or average losses of like employers of comparable size totalled $83,962. Porter alleges that this favorable loss experience compared with expected losses was at the rate of 49.9% and that under the merit rating system adopted by the commission, the Cleveland operation was entitled to a merit credit rating of 45%.

Porter alleges that as a part of the sale of the hardware manufacturing business of the Cleveland Company to Porter the former agreed to transfer to Porter its workmen's compensation account together with its merit rating accident cost experience. Porter alleges the two corporations joined in an application of said commission for such a transfer and that Porter stated that it would conduct the Cleveland operation in the same maner as conducted by the Cleveland Company without change in management, personnel, methods or processes, building plant, equipment production or business. Porter says the said application to transfer was approved by said commission and that the commission ordered the merger effective July 31, 1957 of said risk No. 1305 and risk No. 161,569 and that said commission directed that the workmen's compensation insurance coverage for the combined operation be continued under risk No. 161,569 in the name of Porter.

Porter says respondents have refused, in establishing the rate for the combined operation, to allow any credit for the 46% credit developed by the hardware manufacturing business and have allowed only 3%

credit for the 93% favorable experience for the rubber products business and have established a premium for the year July 1, 1957 at the rate of $1.37 per one hundred dollars of pay roll, which is the basic rate with a merit credit rating of 3%.

Porter says that respondents, using the new higher premium rate demanded $10,692.43, with respect to the hardware manufacturing business pay roll for the period from July 1, 1957 to December 31, 1957 and threatened to cancel relator's insurance coverage unless this amount was paid under which threat relator paid said amount under protest.

Porter says if the 46% merit rating credit to which the Cleveland operation allegedly was entitled had been applied to the hardware manufacturing business premium it would have produced a premium rate of 76c per one hundred dollars of pay roll and the premium for the period from July 1, 1957 to December 31, 1957 would have been $5,931.58.

Porter complains not only of this alleged overcharge of $4,760.85 but further states that unless otherwise ordered by this court, it will be required to pay premiums for the next four and one-half years at the basic rate without any reduction based on accident and occupational disease experience.

Porter says that the annual premium for the Cleveland operation will amount to approximately $22,000 a year, whereas according to Porter's figures the premium should total approximately $12,000 a year.

The result complained of arises, it is alleged, by virtue of Rule II of the General Rating Rules adopted by the Bureau of Workmen's Compensation and the Industrial Commission of Ohio effective July 1, 1957. The said Rule II is set forth in the petition of relator as follows:

"The basic or manual rate is hereby defined as the rate printed in the Manual Table of basic premium rates and is expressed as the unit of premium per $100 of payroll for accident and disease coverage.

"Where one legal entity immediately and wholly succeeds another in the operation of a business, and the succeeding operator is without coverage, and the operations succeeded to constitute all of the operations of the succeeding entity, he or it may be given the predecessor's merit rating experience, provided the former and succeeding entity mutually agree to a transfer of the former operator's insurance, rate and premium obligation, if any. Otherwise the succeeding operator shall apply for new coverage.

"When a succeeding operator has coverage and at the time of the transfer is being merit rated thereon, such experience rating alone shall be applicable to such operator except when the transfer involves a merger or consolidation of a parent company and one or more wholly owned subsidiary companies. In such case, and under such circumstances, the experience of all consolidated companies shall be combined for merit rating purposes.

"When an employer fails to qualify for experience rating as provided in Rule III, he shall be rated at the basic rate."

Applied to the facts as they exist in this case it would appear that the merit rate of relator for its Cincinnati operation "alone shall be applicable to such operator." Relator does not complain that he is

treated differently from others or that the rule is wrongly construed but urges that it is invalid and illegal. He further says that it fails to safeguard the workmen's compensation fund, is unjust, fails to encourage accident prevention and that its adoption was an abuse of discretion. The prayer of the petition is as follows:

"WHEREFORE, relator prays that this court issue a writ of mandamus to Respondents ordering Respondents to fix the premium rate of relator's Risk No. 161569 on hardware manufacturing business for the year July 1, 1957 to July 1, 1958 at 76c per $100 of pay-roll and to refund to relator the sum of $4,760.85 covering excessive payments required by Respondents for the period July 1, 1957 to December 31, 1957 and to use the combined accident and occupational disease experience of Risk No. 1305 and Risk No. 161569 in fixing the premium rates for all periods after July 1, 1958 during which the accident and occupational disease experience prior to July 1, 1957 are used."

As previously stated this is an action in mandamus filed originally in this court and the ground of the special demurrer is that this court lacks original jurisdiction of the subject of the action. The jurisdiction of this court to maintain original proceedings in mandamus arises not by virtue of statute but is conferred directly by the **Ohio Constitution, Article IV, Section 6,** which so far as here applicable provides as follows:

"The courts of appeal shall have original jurisdiction in quo warranto, mandamus, habeas corpus, prohibition, and procedendo * * *."

In the brief in support of the special demurrer it would appear that respondents believe the relief sought is essentially injunctive in character and hence because this court does not have original jurisdiction in equitable proceedings or proceedings having for their main purpose an injunction, that the court lacks original jurisdiction in this case.

Respondents also urge at page six of their brief that "relator has an adequate remedy by way of injunctive relief in equity." Relator in opposing this argument calls attention to §4123.21 R. C., which provides in part as follows:

"No injunction shall issue suspending or restraining any order, classification, or rate adopted by the industrial commission, * * *."

We agree in part with the contention of relator that within the express terms set forth in §4123.21, supra, R. C., no injunction may be issued and hence to that extent an equitable proceeding will not lie. In our opinion the petition is drawn as an action in mandamus and this court has clear authority to entertain and decide proper original actions in mandamus.

In our opinion the special demurrer is not well taken and must be overruled.

That leaves the question whether the petition states facts which constitute a cause of action. It appears to be well settled that where the action to be directed or controlled is within the discretion of such official, mandamus cannot be used to control such discretion. Mandamus, of course, may be used to require the exercise of discretion but it is not claimed here that the commission has failed to act. In **25 O. Jur. 1003, Mandamus, Section 28,** it is said:

"It is well settled that the lawful discretion vested in an individual, officer, or corporation cannot be destroyed, controlled, or limited by the writ of mandamus. * * *."

In 34 American Jurisprudence 856, Mandamus, Section 68, it is said:

"While, in matters involving official discretion, mandamus may be resorted to for the purpose of compelling the exercise thereof, the use of the writ will not ordinarily be extended beyond that, so as to interfere with the manner in which the discretion shall be exercised or to influence or coerce a particular determination. As generally stated, writs of mandamus will not issue to control the exercise of official discretion or judgment or to alter or review action taken in the proper exercise of such discretion or judgment, for the writ cannot be used as a writ of error or other mode of direct review."

We have examined a number of the statutory provisions having. to do with workmen's compensation fund classifications, premium merit rating and related topics and we conclude that many matters and the selection of various methods have been left to the sound discretion and good judgment of the commission. In the matter of fixing and maintaining premium rates there are a number. of relevant sections, one being §4123.34 R. C., in which the General Assembly expressly recognizes that the commission may exercise discretion. The first sentence of §4123.34 supra, R. C., is as follows:

"The industrial commission, in the exercise of the powers **and discretion conferred upon it** in §§4123.29 and 4123.31 R. C., shall fix and maintain, for each class of occupation, or industry, the lowest possible rates of premium consistent with the maintenance of a solvent state insurance fund and the creation and maintenance of a reasonable surplus, after the payment of legitimate claims for injury and death that it may authorize to be paid from the state insurance fund for the benefit of injured and the dependents of killed employees." (Emphasis added.)

In §4123.29 R. C., reference is made to "the opinion" of said commission, the second sentence thereof reading as follows:

"Where the payroll cannot be obtained or, **in the opinion of the commission,** is not an adequate measure for determining the premium to be paid for the degree of hazard, the commission may determine the rates of premium upon such other basis, * * *." (Emphasis added.)

Again in determining the form of rating system to be used, the commission is expressly authorized to use its judgment in fixing and determining the merit rating system to be used under §4123.31 R. C., providing in part as follows:

"The commission may apply that form of rating system, which, **in its judgment,** is best calculated to merit rate or individually rate the risk most equitably, predicated upon the basis of its individual occupational disease experience after January 1, 1942, and encourage and stimulate the prevention of occupational diseases." (Emphasis added.)

It may well be that the merit rating system favored by relator has much to recommend it. There is a substantial difference between a rate of 76¢ per one hundred dollars and $1.37 per one hundred dollars. The

414

amounts involved are quite substantial and understandable and the subject of concern to relator.

The trouble is that relator is asking this court either to adopt a new Rule II, or to amend the one already in force. This, of course, is not the function of mandamus and this court has no power to make such an order.

The General Assembly has expressly given to said commission the right to exercise its good judgment or sound discretion in drafting its rules and said commission has exercised that discretion. It is·claimed that its action in this case amounts to an abuse of discretion but with that we cannot agree.

In our judgment, therefore, the second ground of the demurrer is well taken, the petition seeks to control the exercise of discretion lawfully vested in the commission and for that reason said general demurrer must be sustained.

PETREE, PJ, MILLER, J, concur.